IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Perry Lee Watford, #289215,<br><br>       Petitioner,<br><br>vs.<br><br>Robert M. Stevenson, III, Warden,<br><br>       Respondent. | Civil Action No. 6:09-924-SB-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently confined in the Broad River Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Lexington County conviction and sentence. The Lexington County Grand Jury indicted the petitioner at the June 2002 term of court for leaving the scene of accident with personal injury with death (02-GS-32-2322) and reckless homicide (02-GS-32-2321). Attorney Robert Theo Williams represented him on these charges.

On December 3, 2002, the petitioner pleaded guilty before the Honorable Marc H. Westbrook, who sentenced him to 25 years imprisonment for leaving the scene of accident with personal injury with death and 10 years for reckless homicide. Judge Westbrook ordered that both sentences were concurrent to the sentence imposed on

revocation of probation from a 1999 conviction and sentence for assault and battery of a high and aggravated nature ("ABHAN").[1]

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Aileen P. Clare represented him on appeal before the South Carolina Court of Appeals. On July 7, 2003, Ms. Clare filed a final *Anders* brief of appellant[2] on the petitioner's behalf and petitioned to be relieved as counsel. The final *Anders* brief of appellant presented the following issue for review:

Was appellant's sentence unconstitutionally disproportionate?

After the petitioner retained Tara Dawn Shurling to represent him in his post-conviction relief (PCR) proceedings, however, Ms. Shurling wrote the court on January 23, 2004, explained that she had been retained to represent the petitioner in the PCR, provided the court with the petitioner's January 22, 2004, affidavit indicating that he did not want to appeal and asked that the appeal be dismissed. Ms. Shurling also represented that she had spoken to Ms. Clare, and that Ms. Claire concurred in the petitioner's decision to abandon his appeal. On April 30, 2004, the South Carolina Court of Appeals issued an "Order of Dismissal and Remittitur," in which it dismissed the petitioner's appeal and sent the remittitur to the Lexington County Clerk of Court.

The petitioner filed a PCR application (04-CP-32-1996) on June 3, 2004, with the assistance of Ms. Shurling. He alleged the following grounds for relief in his application:

> 10a. The Applicant received ineffective assistance of counsel prior to and during his guilty plea proceeding in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States

---

[1]The petitioner had received a sentence on the ABHAN of 10 years imprisonment, suspended on five years probation. He violated the terms of his probation by having contact with his ABHAN victim.

[2]*See Anders v. California*, 386 U.S. 738 (1967).

2

> Constitution, as well as Article I, Section 14 of the South Carolina Constitution.
>
> 11a. Trial Counsel failed to adequately investigate the Applicant's charges, failed to investigate and interview potential witnesses and failed to give his client adequate legal advice prior to the Applicant's guilty plea proceeding. Trial counsel failed to fully advise the Applicant of all the consequences of this plea and further failed to investigate potential defenses against the charges against the Applicant.
>
> 10b. The Applicant's Plea of Guilty was not Voluntarily and Intelligently entered. The judgment and sentence against the Applicant were entered in violation of his rights pursuant to due process of law.
>
> 11b. Counsel failed to provide effective assistance of counsel prior to and during his guilty plea proceeding. The Applicant's probation revocation was a direct consequence of his pleas which were not knowingly and voluntarily entered.
>
> 10c. The Applicant received ineffective assistance of counsel in connection with his Probation Revocation. But for which the Applicant would not have pleaded guilty to the new charges which were the basis for his probation revocation.
>
> 11c. The Applicant's probation revocation was a direct consequence of his pleas which were not knowingly and voluntarily entered.

The State filed its return on August 13, 2004.

The Honorable Clyde N. Davis, Jr., held an evidentiary hearing into the matter on January 24, 2006, at the Lexington County Courthouse. The petitioner was present at the hearing, and Ms. Shurling represented him. Assistant Attorney General Sabrina C. Todd represented the State. The petitioner testified on his own behalf and he presented the testimony of trial counsel, Mr. Williams. The State presented testimony from the victim's mother, Mrs. Angela Turkula-Rinneger. At the onset of the PCR hearing, the applicant indicated the issues on which he intended to proceed were (1) failure of counsel

3

to fully investigate the case including the issue of proximate cause and (2) failure to fully investigate the grounds for probation revocation.

On August 11, 2006, Judge Davis filed an order denying post-conviction relief, and dismissing the application with prejudice. The order of dismissal addressed the petitioner's claims that were identified at the PCR hearing.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings in the South Carolina Court of Appeals. On May 1, 2007, Mr. Pachak filed a *Johnson* petition for writ of certiorari[3] on the petitioner's behalf and petitioned to be relieved as counsel. The only question presented in the *Johnson* petition was stated as follows:

> Whether defense counsel was ineffective in failing to investigate the proximate cause of death of the victim?

The petitioner subsequently filed his *pro se Johnson* petition for writ of certiorari, in which he alleged that:

> I. Whether defense counsel was ineffective in failing to investigate the proximate cause of death of the victim?
>
> II. Whether trial counsel failed to provide effective assistance of counsel prior to and during his guilty plea proceeding. Petitioner's pleas of guilty were coerced by counsel's failure to provide adequate representation?
>
> III. Whether Petitioner's probation revocation was a direct consequence of his pleas which were not knowingly and voluntarily entered and denied Petitioner counsel?

The South Carolina Court of Appeals filed an Order denying certiorari and granting counsel's petition to be relieved on May 2, 2008. It sent the remittitur to the Lexington County Clerk of Court on May 20, 2008.

In his petition for habeas corpus relief now before this court, the petitioner raises the following allegations:

---

[3]*Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

4

**GROUND ONE:** The Petitioner was denied the right to the effective assistance of counsel, as guaranteed by the 6th and 14th Amendments, when plea counsel failed to ensure that an autopsy was performed on the decedent prior to his cremation.

**SUPPORTING FACTS:** The Petitioner was charged with reckless homicide and leaving the scene of an accident resulting in death in connection with a collision with the decedent's vehicle. Defense counsel did not insist upon an autopsy being performed on the decedent to determine the cause of death, and whether the decedent had died prior to the accident. The petitioner's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as he did not know that he could argue that the State could not prove that the petitioner's conduct was the proximate cause of the decedent's death.

**GROUND TWO**: The Petitioner was denied effective assistance of counsel when plea counsel failed to investigate the decedent's vehicle.

**SUPPORTING FACTS**: The Petitioner was charged with reckless homicide and leaving the scene of an accident resulting in death in connection with a collision with the decedent's vehicle. The Petitioner claimed that he hit the decedent's vehicle but did not see the vehicle prior to doing so. Plea counsel failed to investigate the condition of the decedent's vehicle to determine if the vehicle had working lights the night of the accident. The Petitioner's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as he did not know that he could argue that his conduct was not criminal if the decedent's actions caused the accident.

**GROUND THREE:** The Petitioner was denied the effective assistance of probation revocation counsel, as guaranteed by the 6th and 14th Amendments to the United States Constitution, when probation counsel failed to investigate the alleged probation violation.

**SUPPORTING FACTS:** The Petitioner was on probation at the time of his plea. During the plea proceeding, the Petitioner's probation officer moved to violate the Petitioner's probation, due to the Petitioner's alleged contact with the victim from the underlying conviction. The Petitioner has not had deliberate contact with the victim. Furthermore, if plea counsel had provided the effective assistance of counsel and the Petitioner not pleaded guilty, the Petitioner would have had no other alleged probation violations.

On July 20, 2009, the respondent filed a motion for summary judgment. The petitioner, through his counsel, filed his opposition to the motion for summary judgment on September 28, 2009.

**APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of

6

> legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

## UNDERLYING CASE

In the early morning hours of October 10, 2001, on Interstate 26 in Lexington County, South Carolina, the tow truck that the petitioner was driving collided with the small car that the victim was driving, striking the victim's vehicle in the rear. The petitioner's tow truck rode up the back of the victim's vehicle and crushed the roof of the victim's car. The petitioner then got out of the tow truck and fled the scene. The petitioner's two passengers stayed at the scene. The petitioner turned himself in to police the following day (App. 10-14). The victim was already dead when police and medical personnel arrived at the scene. No autopsy of the victim's body was conducted. The victim's death certificate listed the cause of death as multiple trauma (App. 88-91).

### *Ground One*

In ground one, the petitioner alleges that his guilty pleas were involuntarily and unknowingly entered because his defense counsel was ineffective for failing to investigate the proximate cause of death of the victim. At the PCR hearing, the petitioner testified that he had extensive discussions with counsel about the State's evidence before

7

deciding to plead guilty. Also, counsel reviewed the discovery materials that the State had provided to counsel. He claimed that there was no documented cause of death of the victim. He also contended that he had discussed with counsel the possibility that the victim might have already been dead at the time he collided with the victim's car. Counsel told him that there was no autopsy, but counsel never discussed moving to quash the charges against him on this basis (App. 70-71).

The petitioner further testified that he had consistently indicated that he had not seen the victim's automobile until he was "right on top of it," that the victim's car was stopped in the road, and that the taillights were not working on the victim's Mitsubishi. He claimed that no witnesses had indicated that the victim's vehicle was moving when he struck it. He also claimed that he believed that he would have stopped sooner if the victim's taillights had been working. However, counsel never reviewed with him the inventory of the victim's car that the Highway Department provided to counsel, and he and defense counsel had never discussed testing the car's taillights to determine whether they were operational. He claimed that he would not have pleaded guilty if counsel had discussed these possible defenses with him and investigated them (App. 71-73).

On cross-examination, the petitioner admitted that he had admitted his guilt to both charges and that he had not disputed the State's proffer of facts in support of his pleas. He had also stated his satisfaction with trial counsel's representation at that time. However, he maintained that counsel had instructed him not to speak (App. 78-82).

Defense counsel testified at the PCR hearing that he had become involved in this case shortly after the wreck. The petitioner admitted that he had been drinking at "a couple of places" before the collision, but claimed that he had not seen the victim and felt that he would have seen the victim "if they had the lights on." Counsel had received the discovery materials provided by the State, as well as discovery provided to him in the civil case, which he handled. Although an autopsy was not performed, the death certificate from the coroner listed the cause of death as multiple trauma. Defense counsel provided

8

this document to his client. Counsel was aware that coroners are not physicians, and he knew that an autopsy had not been performed because "there wasn't much question about what the [victim] died of when they found him." He further acknowledged that an autopsy could have been done if the victim had been buried, as opposed to cremated, but he explained that the State would have advised the victim's mother against cremation if he filed a motion for an autopsy. Counsel stated that he did not think that it would have been a good idea to further antagonize the victim's mother, who was devoted to her son and was actively involved in the case (App. 86-94; 100-01).

Because of counsel's involvement in the civil lawsuit, counsel was aware of some of the victim's medical history. Counsel knew that the victim did not have any alcohol, cocaine, or drugs of any kind in his system at the time of his death (App. 14). To the best of counsel's knowledge, the victim had been a healthy 23-year-old male. However, counsel did not have anything in his file to reflect a request for the victim's medical records, and he did not know whether the victim had any pre-existing medical condition that could have caused the victim to die prior to the collision (App. 94-96).

The discovery provided to counsel reflected that the victim's vehicle was struck from the rear "and that the taillights, the brake lights and so forth were not sealed for evidence." When asked whether he did anything to investigate whether or not the taillights were operational at the time of the collision, counsel testified that the report stated that the Highway Patrol was "unable to make a determination of whether or not they were operating at the time because of damage to the lights." Counsel further testified that there were no "credible [eye]witnesses" to the collision: only the two people who were riding with the petitioner at the time.[4] A woman heard the collision and saw the petitioner leave the scene, but she did not see what had occurred. Counsel later testified that he had

---

[4]According to defense counsel, the two men with the petitioner on the night of the wreck had been drinking, and he could recall that one of the men had a blood alcohol level of .22 or .23. Another witness could have established that the petitioner drank at least three beers before the collision (App. 103-04).

9

photographs of the victim's vehicle and the petitioner's tow truck, and he explained that there had not been much left of the car (App. 96-97; 101-04).

The report from the Highway Patrol reflected that the victim was traveling at 60 mph at the time of the collision, while the petitioner was going approximately 80 mph at the time. Counsel thought that the speed given for the petitioner's tow truck was too high (the approximate speeds were given based upon skid marks at the scene). However, the report showed that the victim's vehicle was moving when the petitioner struck it, and the report did not contain any information that the vehicle might have been stationary when struck. The report also stated that the victim's headlights were on when the collision occurred and that the switch for the taillights was on as well. Counsel felt that the petitioner would have had a stronger case if he had remained at the scene, since he could have told his version, instead of the two drunk friends who remained (App. 104-11).

Mrs. Turkula-Rinneger, the victim's mother, testified that her son was "always healthy" and that he never had "any kind of medical problems whatsoever." He had previously served four years in the military before receiving an honorable discharge (App. 115-19, 121).

At the conclusion of the PCR hearing, the petitioner contended that defense counsel was ineffective for failing to request that an autopsy be performed on the decedent's body (App. 126-27). The petitioner argued that since defense counsel failed to take this crucial step in his defense, he was forever foreclosed from showing how he could have used that evidence to his advantage at trial (App. 126-27). The petitioner further argued that he should not be penalized due to something that his defense attorney failed to do, and that he should have been granted a new trial (App. 134-35).

The PCR court denied and dismissed this allegation, finding as follows:

Counsel did not demand an autopsy because it did not seem
to be a good idea to get the victim's family more upset. There
was no evidence that this mid-twenties former soldier had any
underlying medical condition which would suggest some other

10

> cause of death. The coroner's report and death certificate indicate multiple trauma wounds to the body. … Given these facts and counsel's strategy of trying not to inflame the family further prior to disposition of the criminal case, this Court finds no ineffective assistance of counsel.

(App. 142). The petitioner appealed this decision, and his court-appointed counsel briefed the PCR court's denial of relief on this issue as the one issue raised pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988). The petitioner also raised this issue as his first ground for relief in his pro se petition for certiorari. The South Carolina Court of Appeals denied certiorari.

The respondent first argues that this ground is procedurally barred. However, because the issue was raised on appeal in the *Johnson* brief and in his *pro se* petition for certiorari, it appears to this court that a review on the merits is warranted.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

While the Court in *Hill v. Lockhart*, 474 U.S. 52, 56 (1986) adopted the *Strickland* standard for allegations that trial counsel was ineffective in representation at a plea, the ineffective assistance of counsel standard is somewhat different in the context of

11

a guilty plea. "In the context of a guilty plea, the petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Further, in assessing counsel's performance, a reviewing court must presume his conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 688-89. The reviewing court also must be highly deferential in scrutinizing counsel's performance and must filter the distorting effects of hindsight from our analysis. *See id.*

The record, discussed above, supports the PCR judge's finding that counsel's performance was not deficient. Here, the record shows that the victim was a 23-year-old healthy man who did not have any alcohol or drugs in his system at the time of death. His small car was run over by the petitioner's tow truck, and the coroner determined that the victim died of multiple trauma. Given the foregoing and defense counsel's wish not to "inflame" the victim's family, defense counsel's failure to request an autopsy was reasonable.

The Court in *Strickland* explained the deference owed counsel's strategic judgments in terms of the adequacy of the investigations supporting those judgments:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-691.

12

Based upon the foregoing circumstances, defense counsel's decision to not further investigate the victim's cause of death was reasonable. Accordingly, ground one is without merit.

***Ground Two***

In ground two, the petitioner alleges he was denied effective assistance of counsel when plea counsel failed to investigate the victim's vehicle. During the PCR hearing, the petitioner testified that he did not discuss with defense counsel whether or not the decedent's taillights were operational at the time of the wreck (App. 71-73). The petitioner testified he would not have pleaded guilty had defense counsel done so (App. 73). Defense counsel testified that he did not investigate whether or not it could be determined that the decedent's vehicle had operating taillights or brake lights at the time of the accident, but that the Highway Department's report from the wreck stated that the damage was too great to evaluate the operational nature of the lights (App. 96).

The PCR court denied and dismissed the petitioner's allegation on this issue, finding:

> The Applicant also alleges that counsel was ineffective for failing to investigate the vehicle to determine if the taillights were operable at the time of the collision. The Applicant complains he did not see the taillights. There were no other witnesses to the accident. Police reports indicate the headlights were on and operating which would give rise to an inference that the taillights were in the on position. The rear of the vehicle was demolished by the accident and there was no showing of what else the attorney could have done to investigate this issue. This Court finds no ineffective assistance of counsel on this issue.

(App. 142-43).

13

The claim fails on the merits.[5] According to the discovery provided to defense counsel, "the taillights, the brake lights and so forth were not sealed for evidence." The record shows that the Highway Patrol was unable to determine whether the taillights were operating at the time of the wreck because of the damage to the lights. However, the Highway Patrol's investigation showed that the switch for the taillights was on, as was the switch for the headlights. Further, the report showed that the victim's vehicle was traveling at 60 mph and the petitioner's tow truck was traveling at 80 mph at the time of the wreck. The report did not contain any information that the victim's vehicle may have been stationary when struck. No showing was made as to what else defense counsel should have or could have done. Based upon the foregoing circumstances, defense counsel's decision to not further investigate the victim's vehicle was reasonable. Accordingly, this claim fails.

***Ground Three***

In ground three, the petitioner alleges he was denied the effective assistance of counsel when his counsel failed to investigate the alleged probation violation. During the guilty plea proceeding, the petitioner's probation was revoked. Defense counsel Williams represented him on this matter as well. Aside from violating the petitioner because of his guilty pleas, an additional probation allegation against the petitioner arose from an allegedly incidental meeting with an ex-girlfriend at a Lowe's hardware store. The petitioner had been convicted of ABHAN in 1999, and the ex-girlfriend was the victim of that ABHAN (App. 22). Defense counsel stated during the plea that while the guilty plea was a violation of the terms of the petitioner's probation, he did not believe that the probation should be violated otherwise:

---

[5]The respondent's arguments that grounds two and three are also procedurally barred have not been addressed as this court finds the claims fail on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

14

> Mr. Williams: Your Honor, for purposes of this hearing, obviously we are pleading guilty to the offenses that he is charged with and indicted under. And we don't contest the fact that the probation— that the pleas would be a violation of the probation that he is on. In terms of any contact with the victim—and I'm not sure it's important in this setting—that any contact was totally unintentional and would not rise to the occasion of being a violation.

(App. 23).

At the PCR hearing, the petitioner alleged that defense counsel was ineffective for failing to conduct a more sufficient investigation into the circumstances of his probation violation (App. 75-77). The petitioner testified that the alleged probation violation – that he was within proximity of the victim – came as a result of him simply visiting a home improvement store. He explained that he did not challenge the probation violation at his December 2002 plea because his plea itself would be a sufficient basis for a revocation of his probationary sentence. He claimed the victim in the ABHAN case and her boyfriend followed him to his house. He also claimed that he had wanted to contest this charge but counsel did not discuss any possible defenses, other than the possibility that seeing her at the store was coincidental. Rather, counsel told him that there was not much point in contesting the probation revocation in light of his decision to plead guilty to the other offenses. On cross-examination, the petitioner acknowledged that during his guilty plea he admitted his guilt, told the court he was satisfied with plea counsel, and told the court that he understood that his guilty plea could serve as a basis for a revocation of his probation independent of any other grounds. He also admitted he had an extensive criminal record as noted in the guilty plea transcript (App. 3-6; 17-21; 75-77; 85-86).

Defense counsel expounded upon his statements at the guilty plea proceeding during the PCR hearing:

> I investigated the probation violation incident and it would have been us arguing that he wasn't intentionally in the store at the same time as this other lady and leaving it up to Judge Westbrook to make a determination as to whether or not we were telling the truth or not.

15

(App. 98-99). Also, counsel concluded that the allegation really did not matter much considering the new charges that the petitioner was facing and to which he pleaded guilty and the fact that any mitigation of that charge would not have affected the petitioner's sentence, since the judge ran the nine years of the revoked sentence concurrent to the greater sentence (App. 98).

> The PCR court denied and dismissed this allegation, finding:
>
> Finally, the Applicant's allegation that counsel did not adequately investigate the probation revocation matter is without merit. Counsel explained that he did investigate the events underlying the alleged probation violation and determined any attempt to challenge it would essentially be a swearing match. Further, because the Applicant was pleading to more serious offenses, counsel did not see the need to raise a challenge to the violation. This Court finds no ineffective assistance of counsel on this issue.

(App. 143).

This claim also fails on the merits. Clearly, the petitioner can show no prejudice from his counsel's alleged deficiency.[6] Based upon the foregoing, ground three is without merit.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 13) be granted and the habeas petition be dismissed.

February 1, 2010       s/William M. Catoe
Greenville, South Carolina      United States Magistrate Judge

---

[6]The petitioner admits as much in his brief, stating, "If the petitioner's guilty pleas are upheld, those guilty pleas were sufficient grounds to revoke his probation. However, if the guilty pleas are invalid, as the petitioner asserts that they are, then the petitioner respectfully submits that his probation revocation proceeding was also invalid" (pet. resp. m.s.j. 16).

16